UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| T.H.,<br><br>     Plaintiff,<br><br>     v.<br><br>KILOLO KIJAKAZI,<br><br>     Defendant. | Case No. 20-cv-09351-LB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 19, 28 |

**INTRODUCTION**

The plaintiff, T.H., seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying her claim for benefits under Titles II and XVI of the Social Security Act.[1] The plaintiff moved for summary judgment, the Commissioner opposed the motion and filed a cross-motion for summary judgment, and the plaintiff filed a reply.[2] Under Civil Local Rule 16-5, the matter is submitted for decision without oral argument. The court grants the plaintiff's motion, denies the Commissioner's cross-motion, and remands for further proceedings.

---

[1] Mot. – ECF No. 19. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.*; Cross-Mot. – ECF No. 28; Reply – ECF No. 30.

ORDER – No. 20-cv-09351-LB

# STATEMENT

## 1. Procedural History

The plaintiff applied for social-security disability insurance benefits on February 23, 2017, and for supplemental security income on March 16, 2017.[3] The Commissioner denied her claim on May 8, 2017, and again on July 18, 2017.[4] On July 31, 2017, the plaintiff asked for a hearing before an Administrative Law Judge (ALJ).[5] On June 7, 2019, the ALJ held a hearing and heard testimony from the plaintiff and a vocational expert (VE).[6] The ALJ issued an unfavorable decision on July 2, 2019.[7] On April 3, 2020, the Appeals Council denied the plaintiff's request for review, and the ALJ's decision became the final administrative decision.[8] The plaintiff timely filed this action on December 27, 2020, and the parties each moved for summary judgment.[9] All parties consented to magistrate-judge jurisdiction.[10]

## 2. Medical Records

The plaintiff originally alleged that she was disabled due to arthritis in the spine and back problems.[11] Records from the following individuals were submitted at the administrative hearing: John Mahony, M.D., a treating physician;[12] Laura Dejesus, P.T., a treating physical therapist;[13]

---

[3] AR 14; AR 217. Administrative Record (AR) citations refer to the page numbers in the bottom-right hand corner of the AR.
[4] AR 122; AR 129.
[5] AR 135–36.
[6] AR 38–80.
[7] AR 11.
[8] AR 4.
[9] Compl. – ECF No. 1; Mot. – ECF No. 19; Cross-Mot. – ECF No. 28.
[10] Consents – ECF Nos. 7, 8.
[11] AR 253.
[12] AR 330–36.
[13] AR 358–70.

Jeff Ritterman, M.D., a treating physician;[14] Soheila Benrazavi, M.D., an examining physician;[15] and E. Trias, M.D. and Leslie Arnold, M.D., state non-examining medical consultants.[16] Because the plaintiff challenges the ALJ's consideration of the medical records, this order summarizes the disputed opinions fully.

### 2.1 Soheila Benrazavi, M.D. — Examining Physician

On June 24, 2017, Dr. Benrazavi conducted a complete orthopedic evaluation of the plaintiff. The plaintiff reported a previous diagnosis of lower-back arthritis, and complained of back pain that can radiate down the left leg, neck pain that goes down the left arm, and her left shoulder coming out of its socket. Dr. Benrazavi assessed morbid obesity, mildly diminished cervical spine range of motion, mild weakness and diminished sensation in the left upper extremity, tenderness on the bilateral bicep tendon, mild thoracolumbar kyphosis, and tenderness and moderately diminished range of motion in the midline thoracic spine. Dr. Benrazavi opined that the plaintiff was able to lift and carry twenty pounds occasionally and ten pounds frequently, stand, walk and sit for six hours per eight-hour workday, and had occasional postural limitations of stooping and climbing.[17]

### 2.2 Laura Dejesus — Treating Physical Therapist

PT Dejesus conducted physical therapy with the plaintiff in October 2017. On October 6, 2017, the plaintiff complained of one year of shoulder pain, lower-back pain, and left lower extremity pain that interfered with mobility. PT Dejesus noted a decreased inferior glide in the left shoulder and deferred strength due to pain, and assessed left shoulder pain coupled with rotator cuff dysfunction and possible biceps irritation. PT Dejesus and the plaintiff started working on the plaintiff's left shoulder, and PT Dejesus set goals for improvement with a prognosis of fair.[18] On October 13, 2017, the plaintiff reported that her shoulder was moving better, but had continued

---

[14] AR 483–91; AR 494–95; AR 498–500; AR 509–10.
[15] AR 345–49.
[16] AR 82–93; AR 96–119.
[17] AR 345–49.
[18] AR 358–59.

pain mostly in the olecranon area.[19] On October 23, 2017, the plaintiff complained of hurting her left elbow, continued pain in her left shoulder, and intermittent left shoulder swelling.[20]

### 3. Administrative Proceedings

#### 3.1  Disability-Determination Explanations

During the administrative process, non-examining doctors generated two disability-determination explanations, one related to the plaintiff's initial application and one at the reconsideration level.

At the initial level, the state doctors found that the plaintiff had no severe impairments and was not disabled.[21]

On reconsideration, the doctors found the following impairments to be severe: (1) essential hypertension, (2) spine disorders, and (3) obesity. They again found that the plaintiff was not disabled.[22]

#### 3.2  Administrative Hearing

The ALJ held a hearing on June 7, 2019. The plaintiff and VE Robert Cottle testified.[23]

##### 3.2.1  Plaintiff's Testimony

The ALJ questioned the plaintiff, who was unrepresented.[24] In June 2014, the plaintiff was rushed to the emergency room because she could not raise her painful and swollen arm. After, she continued working until 2016 and has not worked since.[25] The plaintiff last worked with In-Home Supportive Services, where she provided in-home care to patients. She did such things as lift the

---

[19] AR 360.

[20] AR 361.

[21] AR 86–87; AR 92–93.

[22] AR 102; AR 106; AR 114; AR 118.

[23] AR 38–80.

[24] AR 47–70.

[25] AR 48; AR 53–54.

client into bed, take her to doctor appointments and grocery shopping, prepare meals and feed her, and provide hygiene care.[26] She had varied hours, but typically worked over 40 hours per week.[27]

The plaintiff also testified that she was overweight, causing her health problems including back pain and high blood pressure. She also had hand weakness and wrist swelling, limiting her ability to lift things. She made "[a] whole life change," though, and lost approximately fifty pounds, stopped smoking, and made healthier eating habits, causing her to feel better.[28] Now, she experiences hand cramps when it is cold, and otherwise only has back pain.[29] She takes Lisinopril for high blood pressure and Hydrochlorothiazide and iron for arthritis.[30]

Since October 2018, the plaintiff has been ready and able to work, and has applied to driving related positions.[31]

### 3.2.2   VE's Testimony

VE Robert Cottle testified at the June 7, 2019 hearing.[32] The ALJ asked the VE to classify the plaintiff's prior work according to the Dictionary of Occupational Titles, and the VE responded that the plaintiff worked as a childcare provider (light as generally and medium as actually performed, SVP 4), nurse assistant (medium as generally and actually performed, SVP 4), home attendant (medium as generally and heavy as actually performed, SVP 3), and group home worker (light as generally and actually performed, SVP 7).[33]

The ALJ posed the first hypothetical to the VE: a person of the claimant's age, education, and work experience who can perform "medium exertional work, meaning she could lift or carry 50 pounds occasionally, 25 pounds frequently," "stand, walk, or sit each six hours out of an eight-hour workday," "push or pull as much as she could lift or carry," "frequently climb ramps and

---

[26] AR 49–53.
[27] AR 51.
[28] AR 55–57; AR 77–78.
[29] AR 57–58.
[30] AR 58–59.
[31] AR 60–67.
[32] AR 70–76.
[33] AR 72–73.

stairs, frequently balance, stoop, kneel, crouch, and crawl," and "occasionally climb ladders, ropes, or scaffolds." The VE testified that the hypothetical person could perform all the above jobs, plus two others: (1) childcare provider, (2) nurse assistant, (3) home attendant (as generally but not as actually performed), (4) group home worker, (5) store laborer stocker, and (6) salvation laborer.[34]

The ALJ posed the second hypothetical to the VE: the person can perform "light exertional work, so she could only lift or carry 20 pounds occasionally, 10 pounds frequently," "stand, walk, or sit each six hours out of an eight-hour workday," "occasionally stoop, climb ramps and stairs, ladder, ropes, and scaffolds," and "frequently balance, kneel, crouch, and crawl." The VE testified that this hypothetical person could perform (1) the past work of a group home worker, and the jobs of (2) counter clerk, (3) marker II, and (4) marker.[35]

The VE also testified that, for both of the above hypotheticals, the maximum amount of time an individual could be off task and still remain employable is fifteen percent.[36]

The ALJ also posed a third hypothetical to the VE: the same conditions of the second hypothetical, except the person can perform "sedentary work . . . so she could lift or carry 10 pounds occasionally, less than 10 pounds frequently," stand or walk for "a maximum of two hours out of an eight-hour workday," and sit for unlimited amounts of time. The VE responded that this person would not be able to do the plaintiff's past work.[37]

### 3.3  ALJ Findings

The ALJ undertook the five-step process to determine whether the plaintiff was disabled and concluded that she was not.[38]

---

[34] AR 73–74.

[35] AR 74–75.

[36] AR 75–76.

[37] AR 78.

[38] AR 14–22.

At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the period from her alleged onset date of June 1, 2014.[39]

At step two, the ALJ found the following severe impairments: (1) obesity, (2) degenerative disc disease of the cervical and lumbar spine, (3) hypertension, and (4) degenerative joint disease of the left shoulder with possible bicipital tendonitis.[40]

At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.[41]

The ALJ then determined that the plaintiff has the RFC to perform light work, except that she can "lift or carry 20 pounds occasionally and 10 pounds frequently," "sit, walk, or stand each for 6 hours in an 8 hour workday," "occasionally stoop, climb ramps, stairs, ladders, ropes or scaffolds," "frequently balance, kneel, crouch, or crawl," and "never have concentrated exposure to vibrations, unprotected heights, dangerous moving mechanical parts or extreme cold." The ALJ noted that this RFC "is generally consistent with the opinions of Dr. Benrazavi," to which he gave "great weight."[42]

At step four, taking the VE's testimony into account, the ALJ concluded that the plaintiff was unable to perform any past relevant work as actually or generally performed.[43]

At step five, the ALJ found that the following jobs were available to the plaintiff: (1) counter clerk, (2) marker II, and (3) marker.[44]

The ALJ found that the plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and therefore concluded that the plaintiff was "not disabled."[45]

---

[39] AR 17.
[40] *Id.*
[41] AR 17–18.
[42] AR 18–20.
[43] AR 20–21.
[44] AR 21–22.
[45] AR 22.

ORDER – No. 20-cv-09351-LB                7

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the Commissioner if the claimant initiates a suit within sixty days of the decision. A court may set aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (cleaned up); 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The reviewing court should uphold "such inferences and conclusions as the [Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence in the administrative record supports the ALJ's decision and a different outcome, the court must defer to the ALJ's decision and may not substitute its own decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999). "Finally, [a court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

## GOVERNING LAW

A claimant is considered disabled if (1) he suffers from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the "impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A) & (B). The five-step analysis for determining whether a claimant is disabled within the meaning of the Social Security Act is as follows.

> **Step 1.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(a)(4)(i).

> **Step 2.** Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(a)(4)(ii).
>
> **Step 3.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4)(iii).
>
> **Step 4.** Considering the claimant's RFC, is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(a)(4)(iv).
>
> **Step 5.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

*Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

For steps one through four, the burden of proof is on the claimant. At step five, the burden shifts to the Commissioner. *Gonzales v. Sec'y of Health & Human Servs.*, 784 F.2d 1417, 1419 (9th Cir. 1986).

## ANALYSIS

The plaintiff contends that the ALJ erred by (1) improperly weighing medical evidence, (2) rejecting her testimony, (3) failing to account for all impairments in the RFC determination, and (4) presenting incomplete hypotheticals to the VE.[46]

For the reasons below, the court grants the plaintiff's motion for summary judgment, denies the Commissioner's cross-motion for summary judgment, and remands for further proceedings consistent with this order.

---

[46] Mot. – ECF No. 19 at 5–6.

### 1. Whether the ALJ Properly Weighed Medical Evidence

The plaintiff argues that the ALJ erred by assigning great weight to the opinion of Dr. Benrazavi and failing to consider the left-shoulder range-of-motion limitations identified by PT Dejesus.[47] The Commissioner responds that the ALJ properly accounted for all medical opinions and limitations.[48] The court remands on this ground.

#### 1.1 Legal Standard

The ALJ is responsible for "resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (quotation omitted). In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *see Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (cleaned up).

"In conjunction with the relevant regulations, [the Ninth Circuit has] developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527).[49] Social Security regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 416.927(c) & (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing [non-examining] physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

---

[47] Mot. – ECF No. 19 at 18–22.

[48] Cross-Mot. – ECF No. 28 at 4–6.

[49] The Social Security Administration promulgated new regulations, including a new § 404.1521, effective March 27, 2017. The previous version, effective to March 26, 2017, governs based on the plaintiff's filing date, March 16, 2017.

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (alteration in original) (cleaned up). By contrast, if the ALJ finds that the opinion of a treating or examining physician is contradicted, a reviewing court will require only that the ALJ provide "specific and legitimate reasons supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (cleaned up); *see Garrison*, 759 F.3d at 1012 ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.") (cleaned up). "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

An ALJ errs when he "rejects a medical opinion or assigns it little weight" without explanation or without explaining why "another medical opinion is more persuasive, or criticiz[es] it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012–13. "[F]actors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided[,] the consistency of the medical opinion with the record as a whole[, and] the specialty of the physician providing the opinion . . . ." *Orn*, 495 F.3d at 631 (citing 20 C.F.R. § 404.1527(d)(3)–(6)); *see also Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (an ALJ need not agree with everything contained in the medical opinion and can consider some portions less significant than others).

In addition to the medical opinions of the "acceptable medical sources" outlined above, the ALJ also must consider the opinions of other "medical sources who are not acceptable medical sources and [the testimony] from nonmedical sources." 20 C.F.R. § 404.1527(f). The ALJ is required to consider observations by these sources as to how an impairment affects a claimant's ability to work. *Id.* Nonetheless, an "ALJ may discount [the] testimony" or an opinion "from these other sources if the ALJ gives . . . germane [reasons] for doing so." *Molina*, 674 F.3d at 1111 (cleaned up). "[A]n opinion from a medical source who is not an acceptable medical source . . .

ORDER – No. 20-cv-09351-LB  11

may outweigh the medical opinion of an acceptable medical source[.]" 20 C.F.R. § 404.1527(f)(1). "For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole." *Id.*

### 1.2 Application

The plaintiff first argues that the ALJ assigned too much weight to Dr. Benrazavi's opinion.[50] Because Dr. Benrazavi is an examining medical source and her opinion is contradicted, the ALJ was required to provide "specific and legitimate reasons supported by substantial evidence" in weighing Dr. Benrazavi's opinion. *Reddick*, 157 F.3d at 725. The ALJ assigned "great weight" to this opinion because it was supported by an examination of the plaintiff, clinical observations, and a review of the record, and it was "consistent with the evidence as a whole."[51] These reasons are conclusory and do not adequately explain why Dr. Benrazavi's opinion should be accorded more weight than the other medical sources. *See Garrison*, 759 F.3d at 1012 ("Where an ALJ does not . . . set forth specific, legitimate reasons for crediting one medical opinion over another, he errs."). Thus, remand is warranted on the ALJ's consideration of Dr. Benrazavi's opinion.

The plaintiff also argues that the ALJ failed to consider manipulative limitations (decreased left-shoulder range of motion) identified by PT Dejesus.[52] The Commissioner counters that the ALJ considered and properly rejected those limitations by pointing to treatment notes indicating improvement in the plaintiff's shoulder.[53] Because PT Dejesus is a physical therapist, she is a non-acceptable medical source. 20 C.F.R. § 404.1502(a). Thus, the ALJ had to give germane reasons for rejecting her opinion. *Molina*, 674 F.3d at 1111. The ALJ only mentioned the following about PT Dejesus:

---

[50] Mot. – ECF No. 19 at 22.
[51] *Id.*
[52] Mot. – ECF No. 19 at 22.
[53] Cross-Mot. – ECF No. 28 at 5.

> The claimant underwent some physical therapy in October 2017. The therapist noted that the claimant had been diagnosed with generative joint disease for her shoulder problems. On exam, the claimant had some limitations in the range of motion of her shoulder. The therapist suggested possible biceps irritation. On October 13, 2017, notes indicated that the claimant's shoulder was moving better.[54]

Although the ALJ pointed to treatment notes indicating shoulder improvement, he never explicitly rejected PT Dejesus's opinion, which was error. *See Garrison*, 759 F.3d at 1012 ("Where an ALJ does not explicitly reject a medical opinion . . . , he errs."). Thus, remand is also warranted on the ALJ's consideration of PT Dejesus's opinion.

## 2. Whether the ALJ Erred by Rejecting the Plaintiff's Testimony

The plaintiff next contends that the ALJ failed to provide clear and convincing reasons supported by substantial evidence for rejecting the plaintiff's testimony.[55] The Commissioner counters that "the ALJ properly discounted Plaintiff's testimony based on the record."[56] The court remands on this ground too.

### 2.1  Legal Standard

In assessing a claimant's credibility, an ALJ must make two determinations. *Molina*, 674 F.3d at 1112. "First, the ALJ must determine whether [the claimant has presented] objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (cleaned up). Second, if the claimant produces that evidence, and "there is no evidence of malingering," the ALJ must provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id.* (cleaned up). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284.

"At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Id.* (cleaned up). "Factors that an ALJ may consider in weighing a claimant's

---

[54] AR 19.

[55] Mot. – ECF No. 19 at 22–26.

[56] Cross-Mot. – ECF No. 28 at 6–9.

credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn*, 495 F.3d at 636 (cleaned up). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014); *see, e.g.*, *Morris v. Colvin*, No. 16-CV-00674-JSC, 2016 WL 7369300, at *12 (N.D. Cal. Dec. 20, 2016).

In order to have a meaningful appellate review, the ALJ must explain its reasoning and "*specifically identify* the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102–03 (9th Cir. 2014) ("Credibility findings must have support in the record, and hackneyed language seen universally in ALJ decisions adds nothing.") (cleaned up). "That means [g]eneral findings are insufficient." *Id.* at 1102; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the Court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."). Moreover, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

"[I]nconsistencies . . . between [a claimant's] testimony and [her] conduct [or] daily activities" is a legitimate factor "in weighing a claimant's credibility." *Orn*, 495 F.3d at 636; *Molina*, 674 F.3d at 1112–13 (daily living activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"). Daily activities can only be relied upon by the ALJ, though, "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639. "The ALJ must make specific findings relating to the daily activities and their transferability." *Id.* (cleaned up). In addition, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent" with eligibility for disability benefits; "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Garrison*, 759 F.3d at 1016; *see also Smolen*,

80 F.3d at 1284 n.7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . . .").

### 2.2 Application

The ALJ found that the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, and did not identify any evidence of malingering.[57] Thus, the ALJ was required to articulate specific, clear, and convincing reasons for rejecting the plaintiff's testimony regarding the severity of her symptoms. *Molina*, 674 F.3d at 1112. The only explanation provided by the ALJ was that the plaintiff's testimony was "not entirely consistent with the medical evidence and other evidence in the record." (The ALJ also summarized the plaintiff's "activities of daily living" but did not explain whether those activities undermined the plaintiff's testimony.)[58] This conclusory statement was error. *See Treichler*, 775 F.3d at 1103 ("An ALJ's vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion[,] is insufficient . . . .") (cleaned up). For that reason, and because the court remands for reconsideration of the medical evidence, the court remands on this ground too.

### 3. Whether the ALJ Erred by Improperly Assessing the Plaintiff's RFC

The plaintiff contends that the ALJ's assessment of her RFC did not account for all impairments supported by the record and lacked substantial evidentiary support because "[n]othing in the RFC accounts for the objectively measured manipulative limitations recorded by PT DeJesus, [the plaintiff]'s testimony about her own limitations, the ataxis and fall risk identified by [the plaintiff]'s treating physician, or the observations of the [Social Security Administration]'s own employees."[59] Because the court remands for reconsideration of the medical-opinion

---

[57] AR 18–19.

[58] AR 18–20.

[59] Mot. – ECF No. 19 at 26–29.

evidence, and because the RFC was based partly on the medical record, the court remands on this ground too.

### 4. Whether the ALJ Erred at Step Five

Finally, the plaintiff argues that the ALJ presented incomplete hypotheticals to the VE because those hypotheticals did not incorporate all of the plaintiff's limitations.[60] The Commissioner responds that "the ALJ was not bound to accept additional restrictions in the hypothetical that were not included in the RFC, or based on Plaintiff's rejected testimony or doctors that the ALJ discounted."[61] The court agrees with the plaintiff.

At step five, if (considering residual functional capacity, age, education, and work experience) the claimant is able to "make an adjustment to other work," the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). The burden is on the Commissioner at this step to "establish that there are a significant number of jobs in the national economy that the claimant can do." *Tackett*, 180 F.3d at 1098. The Commissioner may sustain its burden by posing hypothetical questions to a vocational expert that are based on a claimant's residual functional capacity. The vocational expert may give evidence about jobs that a hypothetical employee with the same residual functional capacity as the claimant would be able to perform. *See* 20 C.F.R. § 404.1520(g). A vocational expert's recognized expertise provides the necessary foundation for his or her testimony, and no additional foundation is required. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217–18 (9th Cir. 2005). The hypothetical questions must be based on a residual functional capacity for which there exists substantial support in the record. *See Magallanes*, 881 F.2d at 756–57.

The ALJ's depiction of the claimant's impairments must be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. "A hypothetical question posed to a vocational expert must include all of the claimant's functional limitations, both physical and mental." *Brink v.*

---

[60] Mot. – ECF No. 19 at 29.

[61] Cross-Mot. – ECF No. 28 at 9.

*Comm'r Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009) (cleaned up). "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (cleaned up). While an ALJ "need not include all claimed impairments in his hypotheticals, he must make specific findings explaining his rationale for disbelieving any of the claimant's subjective complaints not included in the hypothetical." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (cleaned up). These restrictions on hypothetical questions apply to the hypothetical on which the ALJ bases his findings. *Lewis v. Apfel*, 236 F.3d 503, 517–18 (9th Cir. 2001).

Because the court remands for a reweighing of the medical-opinion and other evidence, and because the VE hypotheticals were based on that evidence, the court remands on this basis too.

### 5. Remand for Further Proceedings

The court has "discretion to remand a case either for additional evidence and findings or for an award of benefits." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) ("The decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court."). "[I]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Garrison*, 759 F.3d at 1019 (cleaned up).

Here, remand is appropriate to "remedy defects in the original administrative proceeding." *Id.*

### CONCLUSION

The court grants the plaintiff's motion, denies the Commissioner's cross-motion, and remands for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: March 22, 2022

_____
LAUREL BEELER
United States Magistrate Judge